IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DON RICHARD POLLOCK                                                                              PLAINTIFF

v.                              Civil No. 6:15-cv-06066

WENDY KELLY; and MICHAEL
LITTLETON                                                                                      DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis.*

Plaintiff is incarcerated in the Ouachita River Unit of the Arkansas Department of Correction (ADC). On October 12, 2014, Plaintiff was attacked by Inmate Thomas with a mop handle. Plaintiff has sued Defendants contending they violated his federal constitutional rights by failing to protect him from attack by a fellow inmate. Plaintiff filed this lawsuit on July 2, 2015.

Defendants filed a summary judgment motion (ECF No. 20) on July 28, 2016. A hearing was held on September 14, 2016, to allow the Plaintiff to orally respond to the motion. Plaintiff was also offered the opportunity to submit exhibits but did not do so in this case. The motion (ECF No. 20) is now ready for determination.

### 1.  Background

Plaintiff was assigned to Echo barracks at the time of the incident. *See Defendants' Exhibit* (hereinafter *Defts' Ex.*) A at 9.[1]  Plaintiff testified that Echo barracks had a lot of good people in it,

---

[1] Page citations are to the deposition page numbers not the CM/ECF page numbers.

both inmates and officers, and was a quiet barracks with not many disruptions. *Id.* Plaintiff had been in that barracks off and on for a year and a half. *Id.* at 42. Inmate Robert Thomas had been in there approximately a year. *Id.* During this time, Plaintiff never had an argument or altercation with Thomas. *Id.* Plaintiff was not afraid of Thomas and never imagined that Thomas would physically threaten him. *Id.*

On October 12, 2014, Plaintiff and other inmates, including Thomas, were watching television. *Defts' Ex.* A at 12. They were getting along fine. *Id.* at 13-14. Thomas was not on Plaintiff's enemy alert list. *Id.* at 10. In fact, Plaintiff did not have anyone in the Ouachita River Unit on his enemy alert list. *Id.* at 11.

On his way to the restroom, Plaintiff observed a handwritten sign hanging on the wall. *Defts' Ex.* A at 14. Thomas had written a disrespectful note about an older inmate who had memory problems and who lived in the barracks. *Id.* at 12-13. Plaintiff, who was at the time a barracks porter, removed the note and threw it in the trash without saying anything to Thomas. *Id.* at 12. When Thomas discovered Plaintiff had removed the note, he became angry and wrote a note telling the Plaintiff to keep his nose out of Thomas' business.[2] *Id.* at 15. According to Plaintiff, he "politely said that it is my business to keep the walls clean around here because I'm barracks porter, and I didn't think he should be hanging nasty notes like that on the wall." *Id.*

At this point, Thomas got mad and proceeded to get in Plaintiff's face. *Defts' Ex.* A at 15. After warning Thomas to get out of his face three times, Plaintiff pushed hard against Thomas' chest to get him away. *Id.* at 16-17. Thomas then jumped and kicked the Plaintiff and began swinging at the Plaintiff. *Id.* at 17. Plaintiff states he sat there fighting off Thomas' for a few minutes and then

---

[2]Thomas had a tracheotomy and frequently communicated by writing instead of verbally.

they fell to the floor and Plaintiff got Thomas in a headlock. *Id*. Plaintiff told Thomas he could surrender and he would let him go or he would hold him until a guard came and they would both end up going to the hole. *Id.* at 18. Thomas "tapped" Plaintiff "like you do when you when you tap out, giving up a fight" so Plaintiff let him up. *Id.* Plaintiff considered the fight over and did nothing to bring it to the attention of the guards. *Id.* Although the guards could monitor the barracks, no guards were physically present in the barracks at the time. *Id.* at 18-19.

During the fight, Plaintiff's ID badge chain had gotten broken. *Defts' Ex.* A at 18. Plaintiff returned to his rack and was bending over opening his locker when he was struck from behind with a mop handle by Thomas. *Id.* at 20. Plaintiff was struck in the arm when he blocked another blow. *Id.* at 21. Plaintiff's cellmate used a walker and Plaintiff "pulled the walker up and used it for a shield, and backed [Thomas] into a corner, and took the mop handle away from him." *Id.*

Other inmates, who were friends of Thomas, took the walker and mop handle away from the Plaintiff and told him not to touch Thomas. *Defts' Ex.* A at 22. That ended the fight. *Id.* The attack lasted approximately a minute and a half or two minutes. *Id.* Two correctional officers heard the altercation and came into the barracks. *Id.* at 23. Plaintiff and Thomas were handcuffed. *Id.*

Prior to this altercation, Plaintiff had no reason to believe Thomas was a danger to him. *Defts' Ex.* A at 11-12. They had never had any verbal or physical problems before. *Id.*

Plaintiff suffered a two inch cut to the back of his head that requires nine staples. *Defts' Ex.* A at 24. He was not given any medication or pain killers when the wound was stapled. *Id.* He did, however, get Ibuprofen as a chronic pain reliever and it helped a little with the pain. While the wound was healing, Plaintiff testified that he suffered from headaches and migraines. Before this injury, Plaintiff indicated he never had a migraine. Now he seldom has headaches but if he gets a

headache, it is a migraine.

According to Plaintiff, the mop handle was supposed to be locked up in the janitorial/chemical closet. However, the lock had been broken on the closet for nearly a year. Several requests had been made for the lock to be fixed by both inmates, including two requests by the Plaintiff, and staff . They were told to put in a work order. However, they could not get a work order form. For this reason, they just put in requests. Additionally, maintenance personnel who were in the unit were told about the broken lock.

Michael Littleton is the main supervisor of maintenance for the Ouachita River Unit. Plaintiff did not know if Littleton was aware of the lock being broken on the closet in Echo barracks. Plaintiff had no direct contact with Littleton. However, he asserts that due to the inaction of Maintenance Supervisor Michael Littleton, the lock was not fixed.

Wendy Kelley is the Director of the ADC. Plaintiff has never spoken with, or met, her. *Defts' Ex.* A at 44. Director Kelley never personally has done anything to the Plaintiff. *Id.* at 47. Prior to the altercation, Plaintiff never wrote Director Kelley regarding the broken closet door. *Id.* at 45. Plaintiff is suing Director Kelley because he believes she is responsible for everything that goes on at the prison. *Id.* at 47.

Plaintiff was given a disciplinary violation as a result of the altercation and was found guilty. He did not appeal the disciplinary conviction.

Prior to the altercation, Plaintiff had never submitted a grievance about the broken lock. After the altercation, Plaintiff filed one grievance, OR-14-01231, about the broken closet door and the October 12, 2014, incident. *Defts' Ex.* A at 30. This grievance did not make any claims against, or specifically name, the Defendants. The grievance provides as follows:

> The chemical closet door lock has been broken for over a year. I myself ha[ve] requested it to be fixed more than once but nobody has even looked at it let alone fixed it. If it had been fixed when requested, this head wound I got from inmate Thomas would not have happened. This is a security breach that should have been fixed a long time ago. Now I have been hurt because it wasn't fixed when it should have been.

*Defts' Ex.* F at 1. Plaintiff admits he has not filed any grievances against Wendy Kelley or Michael Littleton. *Defts' Ex.* A at 40.

### 2. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing, Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

**3. Discussion**

Defendants maintain they are entitled to summary judgment on the following grounds: (1) Plaintiff failed to exhaust his administrative remedies prior to filing this law suit; (2) Plaintiff has failed to state a constitutional claim against them; (3) Defendants are entitled to qualified immunity on the individual capacity claims; and (4) Defendants are entitled to sovereign immunity on the official capacity claims.

The Prison Litigation Reform Act (PLRA) in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Exhaustion is mandatory. Porter v. Nussle, 534 U.S. 516, 524-25 (2002). In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court concluded that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." Id. at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to clam, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. "[F]ailure to exhaust available administrative remedies is an affirmative defense, not a matter of subject matter jurisdiction." Lenz v. Wade, 490 F.3d 991, 993 n. 2 (8th Cir. 2007).

According to the ADC Administrative Directive 14-16, there are two primary steps to the grievance process. Step One is the Informal Resolution Procedure. At Step One, the inmate should submit a Unit Level Grievance Form "within 15 days after the occurrence of the incident." *Defts'*

*Ex.* D at 5. In the space provided, "the inmate should write a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id.* at 5-6. The form is to be presented to a designated problem solver. *Id.* at 6. The problem solver will meet with the inmate within three working days. *Id.*

If the problem is not resolved, the problem solver documents the attempts made and the inmate may proceed to Step Two. *Defts' Ex.* D at 7. Step Two is the Formal Grievance Procedure. At this step, the inmate files a formal grievance on the same unit level grievance form and deposits it in a designated grievance box. *Id.* This must be done "within three (3) working days from receipt of [the] response" to Step One. *Id.* at 8. The inmate should receive an acknowledgment or rejection notice. *Id.* The inmate should receive a written response by the Warden or Warden's designee within 20 working days. *Id.* at 10.

Finally, an inmate may submit a formal grievance appeal, essentially a third step of the review process, to the Chief Deputy/Deputy/Assistant Director. *Defts' Ex*. D at 11. This must be done "within five (5) working days" after receiving a response to the Step Two formal grievance. *Id.* The appeal will be acknowledged and a decision made within thirty (30) working days unless there is an extension. *Id.* at 12.

Plaintiff's failure to identify the Defendants by name in a grievance is in violation of the provisions of the ADC's inmate grievance procedure. *Defts' Ex.* D at 5-6. While the PLRA does not impose "a name all defendants requirement . . . prisoners must complete the administrative review process in accordance with the applicable procedural rules." Jones, 549 U.S. at 218 (internal quotation marks and citations omitted). The ADC's administrative review procedure does contain

a name all defendants requirement. The undisputed facts establish that Plaintiff failed to comply with this requirement of the ADC's grievance procedure. See e.g., Hill v. Curcione, 657 F.3d 116 (2nd Cir. 2011)(Plaintiff's failure to name the supervisor in his grievance establishes non-compliance with County's grievance procedure and requires dismissal); Robinson v. Andrews, No. 2:11-cv-00164, 2012 WL 4086934 (E.D. Ark. Aug. 29, 2012)(case subject to dismissal because Plaintiff did not comply with ADC's grievance procedure requirement to specifically name each individual involved). Accordingly, Plaintiff failed to exhaust his administrative remedies under the PLRA.

Defendants are entitled to judgment in their favor based because of Plaintiff's failure to exhaust his administrative remedies. In view of this, the Court need not address the Defendants' other arguments in favor of summary judgment.

### 4. Conclusion

For the reasons stated, I recommend that Defendants' summary judgment motion (Doc. 20) be **GRANTED and this CASE DISMISSED WITHOUT PREJUDICE.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **19th day of January 2017.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE